[No. 3640.]

VICTORIANO GONZALES, *alias* FELIS YBARBO, *v.* THE STATE.

THEFT — CHARGE OF THE COURT.— See the opinion *in extenso* for a charge of the court in a theft case held error as being upon the weight of evidence, inasmuch as it authorized the jury to "infer" the guilt of the defendant from his unexplained possession of one of many articles stolen at the same time and place.

APPEAL from the District Court of Bexar. Tried below before the Hon. G. H. Noonan.

The conviction in this case was for the theft of eighteen pairs of trousers, of the aggregate value of $36, the property of L. Moke, in Bexar county, Texas, on the 26th day of February, 1885. The penalty assessed against the appellant was a term of four years in the penitentiary.

L. Moke was the first witness for the State. He testified that he was the proprietor of a dry goods establishment on the Military plaza in the city of San Antonio, Bexar county, Texas. On his

arrival at his store about 7 o'clock on the morning of February 26, 1885, witness was informed that a number of pairs of trousers had been stolen from his stock. Upon examination witness concluded that about eighteen pairs, of the cost value of $50, had been taken, and that they had been taken during the preceding evening. Witness made immediate search for the missing goods, and found one pair at Kaufman's second-hand clothing store — the pair now exhibited. From Kaufman's store witness went to Guerguin's pawn shop, and found another pair of the pants stolen when the lot was stolen on the evening before. Witness positively identified the pants recovered as a part of the lot taken from his store on the evening of February 25, 1885, without his knowledge or consent. The defendant for some time previous to the theft had been a customer of the witness, trading daily in small articles.

Cross-examined, the witness stated that his business house was ordinarily opened at 6 o'clock in the morning and closed at 8, 9 or half-past 9 in the evening, according to the state of trade. Witness identified the pants recovered from Kaufman by their cut, make, material and trimmings, and the pair at Guerguin's by the same means, and also his tag, with private cost and sale price marked thereon. There were no other goods in town of exactly the same material, cut, make and trimmings, otherwise witness would not have been able to identify them by that means. The point in the store where these pants were kept was about twenty feet from the front door. Witness could not say that the defendant was in his store on the night of the theft, but was certain that he saw him there during the day. Witness suspected the defendant of the theft, for the reason, perhaps, that defendant was very often in the store, and always made some insignificant purchase — a nickel's worth of something — evidently as an excuse for being in the store, and witness frequently afterwards missed small articles. The pants recovered from Guerguin's were a striped pair of cassimere pants, worth about $3, and those recovered from Kaufman's store were worth $3.75. The goods taken were worth in the aggregate at least $50. Witness could not possibly be mistaken as to the identity of the two pairs of pants recovered. They were his, and were in his store on the 25th day of February, 1885. The business houses of Kaufman and Guerguin were within four hundred and fifty feet of the witness's store.

John Kempf testified, for the State, that he was a clerk in the store of L. Moke. Witness saw the defendant about Moke's store at dusk on the evening of February 25, 1885. He was then stand-

ing near the point from which the goods were taken. Witness discovered the loss of these goods about half-past 6 o'clock on the following morning. He then went to Kaufman's second-hand clothing store, and found a pair of the pants stolen on the night before, having no difficulty whatever in identifying them, although the tag had been removed. Witness had seen and handled them so often that he knew them perfectly well. Witness never, after the theft of the pants, saw the defendant about Moke's store. Witness knew nothing about the pants found at Guerguin's, as he was not present when they were recovered. He knew, however, that from sixteen to twenty-four pairs of pants were taken from Moke's store on the evening of February 25, 1885. The market value of the pants recovered from Kaufman was about $4. Witness did not sell any of these pants to the defendant. Defendant usually, when he came to the store, made some insignificant purchase.

Isaac Kaufman testified, for the State, that he kept a second-hand clothing store on West Commerce street, San Antonio, Texas. About 5 o'clock on the evening of February 25, 1885, the witness bought the pants identified by Moke and Kempf, from the defendant, paying him therefor $1. Witness asked defendant about the pants. Defendant said that he bought them from Wolfson, and offered them for sale because they were too large for him. The pants had no tag or price mark on them. They were claimed by Moke on the next day.

Leopold Guerguin, pawnbroker, testified for the State that he remembered lending a Mexican a dollar on a pair of pants which were next day claimed by Mr. Moke. He could not identify the defendant as the man, nor did he remember the particulars of the transaction, nor whether the pants had a price tag on them when he received them.

Barbara Caño testified, for the State, that she went one evening in February, 1885, to the Monte Pio del Aguila in San Antonio to pawn some rings. She encountered the defendant on the pavement in front of that establishment, when he offered to sell her a pair of striped cassimere pants. Witness examined them, pawned her rings with the Monte Pio del Aguila, and paid the defendant $1 for them, and gave them to her brother, who wore them until a policeman reclaimed them for L. Moke, some three weeks afterwards. This pair of pants was identified on this trial by Moke and Kempf.

Ralph Moke, a clerk in the store of L. Moke, testified that as soon as he opened the store on the morning of February 26, 1885, he discovered the loss of the goods. He immediately went in

search of them and found the pair in evidence at Guerguin's pawn shop, some time during the forenoon. There could be no possible question as to the identity of the pants. Witness often saw the defendant in Moke's store, sometimes as often as three times a day. He generally bought some trifle, never exceeding ten cents in value.

M. B. Moke, for the State, also testified to the loss of the pants, and that those recovered from Kaufman and Guerguin were some of them. The pants recovered from Barbara Caño were similar in texture, pattern and trimmings to others stolen from the store of L. Moke.

The motion for new trial raised the question discussed in the opinion.

No brief for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

WILLSON, JUDGE. The indictment charges the defendant with the theft of eighteen pairs of trousers of the value of $2 per pair, the property of L. Moke. It was proved on the trial that the defendant was found in the possession of two pairs of the stolen trousers very recently after the theft; and the evidence tends strongly to show that the eighteen pairs of trousers were stolen at the same time, from the same place.

Defendant requested the following special charge: "If you believe from the evidence that defendant is guilty of the theft of but two pairs of trousers from L. Moke, you will in that case assess his confinement in the county jail for any time not exceeding one year, and fine not exceeding $500, or by imprisonment without fine." The court gave this charge with the following additional instruction, viz.: "The foregoing instruction is given with the following as explanatory thereto: If you believe from the evidence that eighteen pairs of pants were stolen at the same time and place from the said L. Moke, and that a pair of said trousers were found in the possession of the defendant recently after the same were stolen, and that the defendant failed and refused to explain how he came into the possession of said pair of trousers, you may infer the stealing of the whole property at the same time from said proof of the recent unexplained possession of a part of the stolen property. Recent possession of stolen property is, however, nothing more than a fact to be considered with all the other facts and circumstances in the case."

We think that portion of the above instructions which informs the jury that they may *infer* the guilt of the defendant of the theft of all the trousers from the fact of his unexplained recent possession of one pair of the same, is a charge upon the weight of evidence, and an invasion of the exclusive province of the jury. It is not for the court to tell the jury what inferences they may draw from facts proved, except in certain specified instances in which the *law* has expressly established certain conclusions or presumptions as arising from a certain state of facts. In the instance before us, the law does not establish the *inference* which the court instructed the jury they might adopt. Such an inference is one of *fact*, and is not a presumption of *law*. It would not always be a proper inference of fact even. There might be circumstances which would preclude such an inference. Some other person than the defendant may at the same time and place, and without complicity with the defendant, have stolen all but the two pairs of trousers which were found in defendant's possession.

It would have been proper for the court to have instructed the jury that, if they found from the evidence that the eighteen pairs of trousers were stolen at the same time and place, from the same person; and if they found from the evidence that the defendant was guilty of the theft of one or two pairs of said trousers, the fact that all of said trousers were stolen at the same time and place would be a circumstance which might be considered by the jury in determining defendant's guilt of the theft of all the trousers. But the court went beyond this, and told the jury that the fact above stated warranted the inference that the defendant stole all the trousers. This, in effect, was stating to the jury that, if the defendant stole a *part* of the property, it having all been stolen at the same time and place, the *law* would infer that he stole the *whole* of it.

There was no exception taken at the time of the trial to this or any other portion of the charge, but in the defendant's motion for a new trial the court's attention was specially called to the error above discussed. We think the error is a material one, which may have resulted in injury to the defendant's rights, and we therefore reverse the judgment and remand the cause.

*Reversed and remanded.*

[Opinion delivered June 13, 1885.]